UNITED STATES BANKRUPTCY COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | |
| JENNIFER JAN BLEDSOE, | ) | Case No. 04-63713-fra7 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| MICHAEL B. BATLAN, TRUSTEE | ) | Adv. Proc. No. 05-7061-fra |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RYAN C. BLEDSOE, | ) | |
| | ) | MEMORANDUM OPINION |
| Defendant. | ) | |

After hearing argument on the parties' cross-motions for summary judgment in this case, I have determined that summary judgment should be allowed in favor of the Defendant.

BACKGROUND

The facts are straight-forward and undisputed: Debtor's petition for relief was filed on May 10, 2004. On November 26,

Memorandum Opinion - 1

2003, a judgment was entered dissolving Debtor's marriage to Defendant. The matter had been hotly contested, and Debtor was found by the Circuit Court to have unlawfully dissipated marital assets, and to have unlawfully failed to provide required discovery. The Court set out extensive findings regarding the Debtor's misconduct and concluded that a default judgment should be entered. The judgment, entered on or about November 26, 2003, awarded a substantial majority of the parties' assets to the Defendant. There is some dispute between the parties as to whether the net benefit of the judgment – that is, the value of the assets less the debt imposed on the Defendant – is as great as the Plaintiff claims. However, as shall be seen, this is not a material dispute.

The Plaintiff/Trustee seeks to avoid the property award contained in the decree as a fraudulent transfer. He relies on Oregon law, specifically ORS 95.230(1)(b) and 95.240(1), claims available to him under § 544 of the Bankruptcy Code. A third cause of action is made pursuant to 11 U.S.C. § 548(a)(1)(B), the federal fraudulent transfer provision of the Bankruptcy Code.

These three statutes are substantially similar. Each provides for the avoidance of a transfer made "without receiving a reasonably equivalent value in exchange." Defendant filed a motion for partial summary judgment, seeking a ruling in his

favor on the state-law claims. Plaintiff filed a cross-motion for summary judgment for all claims.

SUMMARY JUDGMENT

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions, and affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56, made applicable by Fed. R. Bankr. P. 7056. The movant has the burden of establishing that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The court must view the facts and draw all inferences in the light most favorable to the nonmoving party. T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987). The primary inquiry is whether the evidence presents a sufficient disagreement to require a trial, or whether it is so one-sided that one party must prevail as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).

A party opposing a properly supported motion for summary judgment must present affirmative evidence of a disputed material fact from which a factfinder might return a verdict in its favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). Bankruptcy Rule 7056, which incorporates Federal Rule of Civil Procedure 56(e), provides that the nonmoving party may not rest

Memorandum Opinion - 3

upon mere allegations or denials in the pleadings, but must respond with specific facts showing there is a genuine issue of material fact for trial. Absent such response, summary judgment shall be granted if appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 326-27 (1986).

"When one party moves for summary judgment and at a hearing the record reveals no genuine dispute on a material fact, 'the overwhelming weight of authority supports the conclusion that . . . the court may *sua sponte* grant the summary judgment to the non-moving party'." Kassbaum v. Steppenwolf Productions, Inc., 236 F.3d 487, 494 (9th Cir. 2000)(citing Golden State Transit Corp. v. City of Los Angeles, 563 F.Supp. 169, 170-71 (C.D.Cal. 1983)).

DISCUSSION

A. Rooker-Feldman Doctrine

The Rooker-Feldman doctrine is a recognition of the principle that federal courts, other than the U.S. Supreme Court, lack authority to exercise appellate review over a state court's judicial decision. GASH Assocs. v. Village of Rosemont, 995 F.2d 726, 727 (7th Cir. 1993). The doctrine applies only to individuals that were parties to the state-court proceeding; nonparties to the state-court proceeding cannot be bound. Johnson v. De Grandy, 512 U.S. 997, 1006 (1994). While this fraudulent transfer action does not literally seek appellate review of the dissolution judgment, the doctrine may be

Memorandum Opinion - 4

applicable if the federal proceeding is a "de facto" appeal of the state proceeding or involves an issue "inextricably intertwined" with a forbidden de facto appeal. Noel v. Hall, 341 F.3d 1148, 1156-1158. (9th Cir. 2003). I agree with the court in In re Erlewine, 349 F.3d 205, 210-11 (5th Cir. 2003), however, that the Trustee is not precluded by Rooker-Feldman from bringing an action in bankruptcy court alleging a fraudulent transfer. The Trustee was not a party to the dissolution proceeding, nor was he in privity with a party. The Trustee's and the Debtor's interests were, and are, quite distinct. The Debtor's creditors' interests, as represented by the Trustee, were not represented in the dissolution proceeding. Accordingly, the Plaintiff is not precluded by the Rooker-Feldman doctrine from bringing this action.

B. Uniform Fraudulent Transfer Act Claims

Bankruptcy Code § 544(b)(1) provides that

> the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

The Trustee, in his role as an unsecured creditor at the petition date, seeks to avoid the transfer made pursuant to the dissolution judgment under both ORS 95.230(1)(b) and ORS 95.240(1). Both require that the Plaintiff show that the transfer

Memorandum Opinion - 5

was made by the Debtor "[w]ithout receiving a reasonably equivalent value in exchange for the transfer or obligation . . . ." The Plaintiff argues that the only evidence relevant in determining "reasonably equivalent value" in this context is the "value of the property transferred [and] the value of that received in exchange for the transfer." Any other evidence is, in the Plaintiff's view, irrelevant.

Defendant asserts that the award of the marital property in the decree of dissolution does not constitute a "transfer," at least for state law purposes. However, "transfer" is broadly defined under Oregon law. See ORS 95.200(12): "'transfer' means every mode, direct or indirect, absolute or conditional, voluntary or *involuntary* of disposing of or parting with an asset or interest in an asset. . . ." (italics added). This definition is clearly broad enough to encompass the involuntary parting with property imposed by a court in a dissolution or other equitable proceeding. See <u>Greeninger v. Linwood Cromwell and Doris Cromwell (Greeninger II)</u>, 140 Or.App. 241, 915 P.2d 479, <u>review denied</u> 323 Or. 690, 920 P.2d 549 (1996).

In <u>Greeninger</u>, a woman who had obtained a money judgment against Linwood Cromwell for sexual battery filed an action in state court against Cromwell and his wife Doris, seeking to avoid as a fraudulent transfer the transfer of all of Mr. Cromwell's marital assets to his wife, made pursuant to a stipulated

Memorandum Opinion - 6

judgment of dissolution of marriage. The claim was under ORS 95.230(1)(a), which provides that a claim is fraudulent as to a creditor if the transfer was made "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor[.]"

In a first appeal, the appellate court ruled that the plaintiff's claim was a collateral attack on the dissolution judgment, because it was a "'proceeding which was [not] instituted for the express purpose of annulling, correcting or modifying' the dissolution judgment." Greeninger v. Cromwell (Greeninger I), 127 Or.App. 435,438, 873 P.2d 377,379 (1994)(internal citation omitted). "Rather, it is intended to impeach the effect of the judgment as to her." Id. The court in Greeninger II, citing Ore.R.Civ.P. 71C,[1] held, however, that not all collateral attacks against a judgment are impermissible. Greeninger II at 245.

Citing Johnson v. Johnson, 302 Or. 382,394, 730 P.2d 1221 (1986), the Greeninger II court held that a plaintiff can collaterally attack a dissolution judgment by an independent action on the grounds of extrinsic fraud. Greeninger II at 245. In Johnson, the Oregon Supreme Court noted the distinction between extrinsic and intrinsic fraud, and held that an

---

[1] ORCP 71C provides in part: "This rule does not limit the inherent power of a court to modify a judgment within a reasonable time, or the power of a court to entertain an independent action to relieve a party from judgment. . . ."

Memorandum Opinion - 7

allegation of the latter is insufficient to sustain a collateral attack on a judgment made in an independent action. Extrinsic fraud "consists of collateral acts not involved in the factfinder's consideration of the merits of the case . . . [while] intrinsic fraud consists of acts which pertain to the merits." Johnson at 384. "[If] any fraud extrinsic or collateral to the matter involved in the original case sufficient to justify the conclusion that but for such fraud the result would have been different, a new trial may be granted. . . . Extrinsic, as distinguished from intrinsic fraud, pertains not to the judgment itself, but to the manner in which it is procured." Id. at 389-90.

In Greeninger II, the plaintiff claimed that Mr. Linwood transferred all of his assets to his wife to avoid paying any judgment arising out of the previously adjudicated battery. The court stated that those are allegations of fact that would not necessarily be involved in a determination of a "just and proper" division of assets in a dissolution proceeding. It therefore concluded that "plaintiff's claim that the [dissolution] judgment constitutes a fraudulent transfer under the UFTA contains allegations that, if proven, could constitute extrinsic fraud and permit a collateral attack on the [dissolution] judgment." Greeninger II at 246.

Memorandum Opinion - 8

In the present case, Plaintiff has made no allegations of extrinsic fraud with respect to the dissolution proceeding.[2] Instead, the Plaintiff's claims involve the judgment itself: that the Defendant received a greater share of the value of the marital estate than did the Debtor. There are no allegations of collusion or of an actual intent to defraud a particular creditor or creditors. There are no allegations that, "but for such fraud the result would have been different." Accordingly, Plaintiff's fraudulent transfer claims under state law constitute an impermissible collateral attack on the dissolution judgment and must be dismissed.

C. <u>Bankruptcy Code § 548</u>

Code § 548 provides in relevant part:

> (a)(1) The trustee may avoid any transfer of an interest of the debtor in property . . . that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily--
> . . .
>
> (B)(i) received less than a reasonably equivalent value in exchange for such transfer . . .; and
>
> (ii) was insolvent on the date that such transfer was made . . ., or became insolvent as a result of such transfer . . .;
> . . . .

---

[2] Plaintiff may argue that because the dissolution judgment was a default judgment it should not carry the same weight or that it can otherwise be attacked on that basis. However, under Oregon law, a default judgment has the "same solemn character as [a judgment] entered after trial." <u>Watson v. Oregon</u>, 71 Or.App. 734, 694 P.2d 560 (1985).

Memorandum Opinion - 9

The relevant definition of "transfer" for purposes of the fraudulent transfer provision of the bankruptcy code is found at Code § 101(54)(D): "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with — (i) property; or (ii) an interest in property." As is the case under state law, the definition encompasses the involuntary parting of property arising out of a non-collusive court proceeding.

The Plaintiff's case under Code § 548 fails, however, because the Plaintiff is unable to establish that the transfer was without reasonably equivalent value. The starting point in the analysis is <u>BFP v. Resolution Trust Corp.</u>, 511 U.S. 531 (1994). In <u>BFP</u> the court held that the price received at a regularly constituted non-collusive foreclosure sale properly conducted under state law conclusively established reasonably equivalent value. The court begins its opinion with the observation that a reasonably equivalent value in exchange is not the same as fair market value, noting that "market value" cannot be the criterion of equivalence in a foreclosure sale context. <u>Id</u>. at 538. Instead, the search for reasonably equivalent value requires consideration of the regulatory scheme behind the legal procedure giving rise to the transfer. The rationale used by the court in <u>BFP</u> is as applicable in the context of

Memorandum Opinion - 10

a marital dissolution as it is to foreclosures, and would deem that any award of marital property in a noncollusive dissolution proceeding conducted in accordance with state law is conclusively presumed to be in exchange for reasonably equivalent value.  Further support for the argument may be found in the Ninth Circuit's opinion in BFP, which was affirmed by the Supreme Court.  See In re BFP, 974 F.2d 1144 (9th Cir. 1992), aff'd 511 U.S. 531 (1994).

The Fifth Circuit analyzed this question in In re Erlewine, 349 F.3d 205 (5th Cir. 2003).  The Erlewine court, in discussing the BFP decision, noted that

> The Court limited its holding to mortgage foreclosures [internal citation omitted], but the decision's reasoning is helpful here.  In explaining the meaning of reasonable equivalence in the context of a foreclosure sale, the Court remarked that "[f]ederal statutes impinging upon important state interests 'cannot ... be construed without regard to the implications of our dual system of government.'" [internal citations omitted]. In interpreting § 548, the court therefore took account of the states' interest in the security of titles to real property, an interest that would be threatened if every foreclosure could be undone in the federal bankruptcy court.  Some of the same concerns are present in this case and they suggest that we should hesitate before we impute to Congress an intent to upset the finality of judgments in an area as cental to state law as divorce decrees.

Erlewine at 212.  The Erlewine court also observed that the trustee's argument, which is the same as the argument being made here, would, if adopted, subject every divorce decree

Memorandum Opinion - 11

to scrutiny in the bankruptcy court so long as the divorce court divided assets unequally. The court concluded that the debtor received reasonably equivalent value under the dissolution judgment as a matter of law.

Oregon law requires an equitable distribution of the parties' assets in a marital dissolution. Like property that is subject to foreclosure, the economic value of the assets is questionable and difficult to ascertain, so long as it is subject to the competing claims of the parties in the divorce. The divorce resolves these matters, and furthers the state's interests by dividing property in a manner that gives due consideration to the economic interests of the parties and their dependants, given the circumstances of the case. This process should be deemed to provide reasonably equivalent value to the same extent that a foreclosure does.

This approach is further supported by compelling policy considerations, such as those observed by the Supreme Court in BFP and the Fifth Circuit in Erlewine. If a decree of dissolution is subject to collateral attack in federal court because the distribution of assets is financially or mathematically unequal, then virtually every decree would be subject to endless litigation and an "intolerable uncertainty regarding the finality of any" judgment. In re

Memorandum Opinion - 12

BFP, 974 F.2d at 1149.  Absent an unmistakable mandate from Congress or the legislature, federal courts should not find that fraudulent conveyance statutes (whether state or federal) were intended to trump determinations made under the state's carefully considered domestic relations statutes and case law.

The Trustee argues in his Supplemental Memorandum that the Ninth Circuit Bankruptcy Appellate Panel endorsed his view in Roosevelt v. Ray (In re Roosevelt), 176 B.R. 200 (BAP 9th Cir. 1994), aff'd 87 F.3d 311, opinion amended 98 F.3d 1169 (9th Cir. 1996), cert. den'd sub nom Finalco,Inc. v. Roosevelt, 520 U.S. 1209 (1997).  That case involved transfers made pursuant to an unrecorded marital agreement in which the court held that the transfers were made with the actual intent to hinder, delay, or defraud creditors.  Accordingly, the court was not required to, nor did it, determine whether the transfers were made for reasonably equivalent value in exchange.  Moreover, the transfers were not made according to a noncollusive dissolution proceeding conducted in accordance with state law.  Instead, the court was concerned with what constitutes "value" for purposes of Code § 548(c), which provides a lien to a good faith transferee to the extent of value given.  The Roosevelt case is therefore not instructive in the present context.

Memorandum Opinion - 13

CONCLUSION

Because the Plaintiff does not allege any facts which may constitute "extrinsic fraud" under Oregon law, his claims under the Uniform Fraudulent Transfer Act constitute an impermissible collateral attack against the dissolution judgment entered by the state court and the state law claims must therefore be dismissed. Because there are no allegations of collusion, actual intent to defraud, or that the dissolution judgment was not obtained pursuant to a regularly conducted proceeding under state law, the transfers made pursuant to the dissolution judgment conclusively establish reasonably equivalent value for purposes of Bankruptcy Code § 548(a)(1)(B).

Summary judgment will be granted to Defendant on claims 1 and 2 of the complaint. While Defendant did not seek summary judgment with respect to claim 3, there is no material issue of fact outstanding and, for the reasons stated above, summary judgment for claim 3 will also be granted to Defendant. Attorney for the Defendant should submit a form of order and judgment consistent with this Memorandum Opinion.

FRANK R. ALLEY, III
Bankruptcy Judge